RECEIVED
IN ALEXANDRIA, LA
JUL - 1 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| PAUL RAY ROBBINS<br>D.O.C.#88866 | DOCKET NO. 08-cv-1054; SEC. P |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| CORRECTIONS CORPORATION OF<br>AMERICA, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed by Plaintiff Paul Ray Robbins (D.O.C. #88866), pro se and in forma pauperis, on July 16, 2008. Robbins is an inmate in the custody of the Louisiana Department of Public Safety and Corrections (LDOC) and is housed at Winn Correctional Center (WCC) in Winnfield, Louisiana.

In his original complaint, Plaintiff sought only injunctive and declaratory relief as well as class certification; he listed seven other inmates as Plaintiffs, each of whom has filed his own action in this district. The plaintiff alleges numerous violations by the defendants of the constitutional rights of WCC inmates. In his amended complaint, Plaintiff also requests monetary and punitive damages, a transfer to Forcht Wade Correctional Center, pain management, medical appliances, assistance in legal matters, and proper food and clothing.

This matter has been referred to the undersigned for review, report, and recommendation pursuant to 28 U.S.C. § 626 and a

standing order of this Court.

## FACTS ALLEGED

While Plaintiff insists this case is a class action, Robbins is the only named Plaintiff, and the case has not been certified as a class action. [Doc. #5, p.2] Seven other WCC inmates contemporaneously filed identical complaints in this District Court.[1] The complaint filed by Robbins, Guidry, McDowell, Lott, Ford, Aucoin, Chatman, and Haley is virtually identical to the complaint previously filed by WCC Inmates Michael Sampson, Bobby Young, Ralph Sweat, Oscar James, Benjamin Wright, Chester Matthews, Stephen McGill, and Walter Houston.[2] The "new group" of plaintiffs, including Robbins, took the typed complaint of the inmates listed above, erased the names of the eight previous plaintiffs, and wrote in their own names by hand.

Named as defendants in the original complaint are: Corrections Corporation of America (CCA), Warden Tim Wilkinson, Deputy Warden Tim Morgan, Deputy Warden Angel A. Martin, Chief of Security Virgil Lucas, Governor Bobby Jindal, and LDOC Secretary James LeBlanc. Plaintiff adds the following defendants through his amended complaint: Mona Heyse, Pat Thomas, Linda Ramsey, Dr. Pacheco, and

---

[1] The other Plaintiffs listed on the Complaint are Pat A. Guidry (the "lead Plaintiff"), Isaac McDowell, Edwin Lott, George Ford, Todd Aucoin, Rodney Chatman, and Hernando C. Haley.

[2] Docket numbers 08-915, 08-916, 08-917, 08-918, 08-920, 08-921, 08-923, and 08-924, respectively.

2

Dr. Engleson.

A. ORIGINAL COMPLAINT

In the complaint, it is alleged that overcrowding at WCC and certain policies and procedures of LDOC and CCA have led to the violation of Plaintiff's constitutional rights, as well as the rights of other inmates at WCC through:

1. excessive, malicious and sadistic use of force by staff;
2. the use of chemicals such as tear gas and pepper spray to punish or threaten inmates, sometimes administered to an entire dormitory; then, a lack of medical treatment afterward;
3. four and five point hand restraints used for mentally ill inmates and without cause and without proper monitoring;
4. inmates placed in isolation for arbitrary reasons and not properly monitored;
5. inmates exposed to unreasonable risks of harm by other inmates due to inadequate staffing and unsupervised or improperly trained guards;
6. ignoring a known practice of "kicking out" where larger inmates force younger or more fragile inmates to give up food or personal belongings under threats of violence;
7. placing "hits" on certain inmates and "hiring" other inmates to beat up or intimidate them;
8. abusive and arbitrary disciplinary practices;
9. failing to conduct disciplinary hearings;
10. failing to investigate complaints of abuse by guards and thwarting inmates' efforts at contacting PZT (project zero tolerance);
11. failing to provide adequate mental health care;
12. failing to provide adequate physical health care, including vision, hearing, dental, and substance abuse treatment;
13. lack of programs, recreational items, or activities to occupy inmates;
14. lack of nutritional meals;
15. failing to give inmates privacy in the bathrooms;
16. failing to provide sufficient clothing, shoes, and linens;
17. inadequate access to the courts; and
18. retaliation against inmates who try to access the courts.

Of the above allegations, Robbins initially claimed that he was only *personally* subjected to: "lack of programming; inadequate

3

medical care; inadequate administrative remedy process; inadequate clothing; inadequate food; inadequate dental care; verbal abuse; unsanitary conditions; and lack of security and control."³ [Doc. #1-4, p.8] In the amended complaint, Plaintiff claims that all eighteen allegations involve him "personally and directly."

B. AMENDED COMPLAINT

Because the complaint provided only general and conclusory allegations (which were identical to those of another inmate from a prior lawsuit), the Court ordered Plaintiff to amend the complaint and allege facts to support the conclusion that **his** constitutional rights were violated. Rather than provide specific facts regarding the eighteen claims, Plaintiff simply reiterated the allegations of the original complaint and wrote that the facts had already been submitted to the court in the original complaint.

The only facts presented by Plaintiff in the amended complaint involve medical care, privacy, and access to courts.

1. Medical Care

Plaintiff claims that he is diabetic, virtually blind in his right eye, has loss of hearing, high blood pressure, has "D.J.D. bone and joint disorder," Alzheimer's, severe headaches, nose bleeds, gout, "etc., etc." [Doc. #5, p.4] He claims that he has

---

³ Robbin's name is hand-written in a blank on paragraph 16, page 8 of Document #1-4. In the original complaint filed by the first group of inmates, the specific allegations in paragraph 16 were attributed to Inmate Oscar James. 1:08-cv-0915.

4

been treated at Louisiana State University Medical Center in Shreveport, Louisiana, where he received prescriptions and medical orders, which are being denied or not followed by the defendants. Specifically, Plaintiff claims that he has received orders for "colonoptmy", chemotherapy, diabetic tennis shoes, orthopedic boots, long leg brace for left leg, medication to help restore circulation in legs, mineral ice or icy hot for muscles and joints, and medication and treatment for Hepatitis C.

Plaintiff alleges that, on an unspecified date, "security" refused to allow him to go to the infirmary to make an emergency sick call for chest pains and to refill his "nitro tabs" for a heart condition.

2. Access to Courts

Plaintiff complains that, due to WCC and CCA policy, inmate counsel is not allowed to assist other inmates with legal claims. Plaintiff complains that Wilkinson has not responded to Plaintiff's request for inmate counsel's assistance, thereby denying Plaintiff of his "right's [sic] to knolagable [sic] and willing assistance to the courts both civil and criminal." Plaintiff complains that CCA policy has prevented him from furnishing the court with copies of administrative remedy procedure forms, medical records, and medical release forms.

3. Female Guards

Plaintiff complains that the majority of security guards at

5

WCC are females, and that these female guards look at the inmates while they are in the shower, at the urinal, and on the toilet.

**LAW AND ANALYSIS**

First, to obtain a preliminary injunction, the applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the preliminary injunction will not disserve the public interest. See Planned Parenthood of Houston & Southeast Texas v. Sanchez, 403 F.3d 324, 329 (5th Cir. 2005).[4] Also, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. See Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995); see also Sias v. Louisiana 146 Fed. Appx. 719 (5th Cir. 2005)("Sias's allegations are vague and conclusory and are therefore insufficient to establish a 42 U.S.C. §1983 claim.") (citations omitted); Elliott v. Perez, 751 F.2d 1472, 1479 (5th Cir. 1985)(A plaintiff may not plead merely conclusory allegations to successfully state a section 1983 claim, but must instead set forth specific facts which, if proven, would

---

[4]For a permanent injunction to issue, the plaintiff must prevail on the merits of his claim and establish that equitable relief is appropriate in all other respects. See Dresser-Rand Co. v. Virtual Automation Inc., 361 F.3d 831, 847 (5th Cir. 2004)(citations omitted).

warrant the relief sought. (citations omitted)).

1.  Medical Care

Plaintiff essentially complains that he suffers from a slew of illnesses, and that WCC is not following the treatment prescribed by doctors at LSU Medical Center in Shreveport. However, the fact that a plaintiff disagrees with what medical care is appropriate or disagrees with the course of treatment offered by the medical staff does not state a claim of deliberate indifference to serious medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1992) citing Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Also, the fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992). Allegations that a prison doctor should have undertaken additional diagnostic measures or used an alternative method of treatment does not elevate a claim to constitutional dimension. Varnado, 920 F.2d at 321. Plaintiff does not allege that he is being denied all medical care; rather, he complains that WCC is not following the treatment prescribed by another physician. For the foregoing reasons, Plaintiff's

complaint that Pacheco did not follow the treatment prescribed by LSU doctors is frivolous.

Plaintiff also complains that, on an unspecified date and time, an unnamed guard(s) prevented him from making an emergency sick call. To the extent that he seeks monetary damages for same, he has not alleged that he suffered any physical injury as a result of the alleged denial. Title 42 of the United States Code, Section 1997e(e) prohibits claims for emotional injury without a prior showing of physical injury. Therefore, this claim should also be dismissed.

2. Access to the Courts

Plaintiff complains that his request for assistance by inmate counsel is being ignored by Warden Wilkinson. He also complains that CCA policy has prevented him from furnishing the court with copies of administrative remedy procedure forms, medical records, and medical release forms.

Prisoners have a constitutionally protected right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 360 (1996) (citing Bounds v. Smith, 430 U.S. 817, 821 (1977)). The right does not guarantee any "particular methodology but rather the conferral of a capability-the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Lewis, 518 U.S. at 356; see also Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999) (per curiam) (the right encompasses a reasonably

8

adequate opportunity to file non-frivolous legal claims challenging convictions or conditions of confinement). To succeed on a claim of denial of access to courts, Plaintiff must show that he lost an actionable claim, or was prevented from presenting such a claim because of the alleged denial. See <u>Lewis</u>, 518 U.S. at 356. To the extent that Plaintiff seeks monetary damages for a denial of access, his claim is frivolous. Plaintiff has not alleged that he lost or was prevented from bringing an actionable claim because of the alleged denial.

Plaintiff's request for injunctive relief is also frivolous. He has not presented a substantial threat that he will suffer irreparable injury without the assistance of inmate counsel. Moreover, it is settled law that prisoners have a constitutional right of meaningful access to the courts through adequate law libraries <u>or</u> assistance from legally trained personnel. See <u>McDonald v. Steward</u>, 132 F.3d 225, 230 (5th Cir.1998) (quoting <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977)). Plaintiff has no constitutional right to receive legal advice from his fellow inmates. See <u>Shaw v. Murphy</u>, 532 U.S. 223, 229 (2001) (prisoners do not have a "freestanding right to receive legal advice"). Here, Robbins has not alleged that he is without access to a law library. As for his inability to provide the court with copies of documents, Plaintiff was not ordered to produce copies of any documents whatsoever. He was merely ordered to present facts regarding who

violated what constitutional right, when, and where. Plaintiff has not alleged that he is being kept from presenting a non-frivolous claim to the court.

3. Female Guards

Plaintiff complains that WCC employs too many female guards, and that these guards can see inmates while they are showering or using the toilet/urinal. Plaintiff does not assert the violation of a particular constitutional right. However, prisoners retain, at best, a very minimal Fourth Amendment interest in privacy after incarceration. Hudson v. Palmer, 468 U.S. 517, 527 (1984). The Fifth Circuit and other courts have upheld the use of female guards in areas that gave them view of unclothed male inmates. See Barnett v. Collins, 940 F.2d 1530 (5th Cir.1991) (table)(unpublished)(upholding use of female guards in guard towers giving full view of male inmates taking showers); Johnson v. Phelan, 69 F.3d 144, 147 (7th Cir. 1995)("If only men can monitor showers, then female guards are less useful to the prison; if female guards can't perform this task, the prison must have more guards on hand to cover for them."); Timm v. Gunter, 917 F.2d 1093, 1101-02 (8th Cir. 1990) (explaining that constant visual surveillance by guards of both sexes is a reasonable and necessary measure to promote inmate security); Michenfelder v. Sumner, 860 F.2d 328, 334 (9th Cir. 1988)(stating that episodic and casual observation of male prisoners by female guards is justified by

security concerns); <u>Grummett v. Rushen</u>, 779 F.2d 491, 496 (9th Cir. 1985)(stating that "[t]o restrict female guards from ... occasional viewing of the inmates would necessitate a tremendous rearrangement of work schedules, and possibly produce a risk to both internal security needs and equal employment opportunities"). Plaintiff has not presented allegations of a constitutional violation, nor has he alleged a substantial threat that he will suffer irreparable injury if an injunction is not granted.

4. Transfer

Robbins seeks a transfer to Forcht Wade Correctional Center. A prisoner has no constitutional right to be housed in a particular facility. <u>Olim v. Wakinekona</u>, 461 U.S. 238, 244-46 (1983). Additionally, pursuant to <u>Procunier v. Martinez</u>, 416 U.S. 396 (1974), the decisions of a state prison administration are given wide discretion regarding the operation of prison facilities. In questions pertaining to prison administration, according to <u>McCord v. Maggio</u>, 910 F.2d 1248, 1250 (5th Cir. 1990) and following the lead of the Supreme Court, there is established a "minimum intrusion policy" into prison administration decisions. Classification of prisoners is left to the discretion of prison officials, <u>Wilkerson v. Maggio</u>, 703 F.2d 909 (5th Cir. 1983), and <u>McCord v. Maggio</u>, supra, at 1251; <u>Luong v. Hatt</u>, 979 F. Supp. 481, 483-484 (N.D. Tex. 1997).

11

5. Other enumerated claims

In the original complaint, Robbins alleged that, of the eighteen enumerated violations, he was only *personally* subjected to the following: "lack of programming; inadequate medical care; inadequate administrative remedy process; inadequate clothing; inadequate food; inadequate dental care; verbal abuse; unsanitary conditions; and lack of security and control."[5] [Doc. #1-4, p.8] In the amended complaint, Plaintiff claims that all eighteen violations listed involve him "personally and directly." However, Plaintiff fails to set forth allegations to support any claims other than those discussed above.

Specifically, Plaintiff provides no facts indicating that he was ever subjected to excessive, malicious and sadistic use of force by staff. Plaintiff does not describe any incident where he was subjected to chemicals such as tear gas and pepper spray. Plaintiff does not allege that he was ever restrained using four and five point hand restraints. Plaintiff does not allege that he was placed in isolation for arbitrary reasons and not properly monitored. He does not allege that he was subjected to the practice of "kicking out." Plaintiff does not claim to have had a "hit" placed on him by a guard or that he was "hired" by a guard to

---

[5] Robbin's name is hand-written in a blank on paragraph 16, page 8 of Document #1-4. In the original complaint filed by the first group of inmates, the specific allegations in paragraph 16 were attributed to Inmate Oscar James. 1:08-cv-0915.

beat up or intimidate another inmate. Plaintiff does not claim to have been subjected to abusive and arbitrary disciplinary practices. Plaintiff does not allege that he was refused a disciplinary hearing. He does not claim that he made complaints of abuse by guards that Defendants refused to investigate or that his efforts at contacting project zero tolerance where thwarted. Plaintiff does not allege that he was denied adequate mental health care. Plaintiff has not alleged that he was denied food, clothing, or linens. Finally, Plaintiff does not allege that he was retaliated against for trying to access the courts.

## CONCLUSION

Plaintiff has been ordered to amend his complaint to present the best case that could be presented by him under these circumstances, and it is evident that further amendment of the pleadings would serve no useful purpose. Accepting all of Plaintiff's allegations as true, and giving him the benefit of every doubt, it is evident that Plaintiff has not stated a claim for monetary damages or injunctive and declaratory relief.

**IT IS RECOMMENDED** that Plaintiff's claims be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and failing to state a claim for which relief can be granted under 28 U.S.C. §1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and

recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** in Chambers at Alexandria, Louisiana, this ___ day of _____, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE